IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| CAPITAL ONE FINANCIAL CORPORATION,<br>1680 Capital One Drive<br>McLean, VA 22102,<br><br>    Plaintiff,<br><br>v.<br><br>DISCOVERCAPITALONE.COM,<br>DISCOVERCAPITALONE.NET, and<br>DISCOVERCAPITALONE.ORG,<br>Internet Domain Names,<br><br>    Defendants. | Civil Action No.  1:24-cv-470 |

## COMPLAINT

Plaintiff Capital One Financial Corporation ("Capital One"), through counsel, alleges as follows for its *in rem* Complaint against Defendants DiscoverCapitalOne.com, DiscoverCapitalOne.net, and DiscoverCapitalOne.org (the "Defendant Domain Names").

## NATURE OF THE SUIT

1.  This is an *in rem* action for cybersquatting under the Federal Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), related to "DiscoverCapitalOne" formative domain names registered within a week of the announcement by Capital One that it had reached an agreement to acquire Discover Financial Services.

2.  Recent government reports highlight the prevalence of cybersquatting, associated trademark infringement, and attendant harm to consumers and brands.  Cybersquatting actors have grown more and more sophisticated with misuse of protected marks, beyond simply seeking to

gain internet traffic intended for the mark holder.  Today's cybersquatters engage in bad acts including leveraging trademark recognition to distribute computer viruses or "malware," to collect visitors' personal information for inappropriate or illegal uses, to generate revenue by displaying pay-per-click advertisements related to the legitimate site, or even to display counterfeit versions of brand owners' goods or services.

3. Cybersquatting harms consumers by causing confusion with the legitimate sites being sought by the consumers and very often results in consumers' computers being infected with computer viruses, "bloatware" or other unwanted software, consumers' personal information being collected and misused, and/or consumers being presented with an endless stream of unwanted advertisements.

4. In the present case, Capital One's valuable rights in the distinctive and federally registered CAPITAL ONE mark have been deliberately infringed through the bad faith registration, use, and/or trafficking of the Defendant Domain Names, which are confusingly similar to the CAPITAL ONE mark, and Capital One will suffer irreparable harm if such registration and use of the Defendant Domain Names is not immediately enjoined.

## PARTIES

5. Capital One Financial Corporation is a Delaware corporation with its principal place of business at 1680 Capital One Dr., McLean, VA 22102, U.S.A.

6. DiscoverCapitalOne.com is an Internet domain name which, according to the WhoIs registration data, was registered on February 19, 2024 to Registration Private.  A copy of the domain name registration record is attached hereto as Exhibit 1.  The domain name consists entirely of Capital One's protected CAPITAL ONE mark with the addition of the term "discover," which relates to Capital One's financial services.

7. DiscoverCapitalOne.net is an Internet domain name which, according to the WhoIs registration data, was registered on February 21, 2024 to Domain Privacy Service FBO Registrant. A copy of the domain name registration record is attached hereto as Exhibit 2. The domain name consists entirely of Capital One's protected CAPITAL ONE mark with the addition of the descriptive "discover," which relates to Capital One's financial services.

8. DiscoverCapitalOne.org is an Internet domain name which, according to the WhoIs registration data, was registered on February 26, 2024 to REDACTED FOR PRIVACY. A copy of the domain name registration record is attached hereto as Exhibit 3. The domain name consists entirely of Capital One's protected CAPITAL ONE mark with the addition of the term "discover," which relates to Capital One's financial services.

## JURISDICTION, VENUE, AND JOINDER

9. This is a civil action for federal cybersquatting in violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

10. This Court has original jurisdiction under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a).

11. This Court has *in rem* jurisdiction over the Defendant Domain Names pursuant to 15 U.S.C. § 1125(d)(2)(A). *In rem* jurisdiction is appropriate under 15 U.S.C. § 1125(d)(2)(A)(ii) because the registration records for the Defendant Domain Names reflect either a fictitious person/entity and/or concealed registrant information, and therefore Capital One cannot obtain *in personam* jurisdiction over a person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1)(A) and/or, alternatively, Capital One, despite its due diligence, has been unable to find a person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1)(A).

12.     Pursuant to 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(aa), Capital One will give notice of the violations of its rights, and its intent to proceed *in rem*, to the contact address set forth in the registration records for the Defendant Domain Names.

13.     Venue is proper in this District pursuant to 15 U.S.C. § 1125(d)(2)(C) in that the registry operator of the .COM domain registry, VeriSign, Inc., and the registry operator for the .ORG domain registry, Public Interest Registry, are situated in this judicial district, and the Defendant Domain Names are .COM and .ORG domain names.

14.     Joinder of the Defendant Domain Names is proper under Fed. R. Civ. P. 20(a)(2) in that the *in rem* cybersquatting claim set forth herein appears to arise out of the same series of transactions, Defendant Domain Names share privacy services, hosts, and/or other common features indicative of common ownership or use, and the same questions of law are common to all of the Defendant Domain Names.  For instance, the registration records demonstrate that all of the Defendant Domain Names cybersquat the CAPITAL ONE mark and do so in the same way—by adding the term "discover" to Capital One's protected mark.  All of the Defendant Domain Names were registered within a week of each other.  Moreover, the claims against all of the Defendant Domain Names involve the same questions of both fact and law, including whether the registrants of the Defendant Domain Names have engaged in cybersquatting through the bad faith registration, use, or trafficking-in of the Defendant Domain Names.

## CAPITAL ONE'S RIGHTS IN THE CAPITAL ONE MARK

15.     Capital One is one of the largest and best known institutions in the financial industry.  The company has operated continuously since 1994, offering a broad range of financial services.  As of March 31, 2023, Capital One had $349.8 billion in deposits, and $471.7 billion in total assets.

16. Capital One operates hundreds of branches nationwide. In addition to its domestic presence, Capital One does business in the United Kingdom and Canada.

17. Capital One is a Fortune 500 company. It trades on the New York Stock Exchange under the symbol "COF" and is included in the S&P 100 index.

18. Capital One has spent billions of dollars over the years—and spends hundreds of millions of dollars annually—advertising, marketing, and promoting its CAPITAL ONE-branded services through a variety of national media, including television, radio, Internet, direct mail, and print advertisements. From 2008 to 2023, Capital One spent almost $30 billion advertising and promoting the CAPITAL ONE name and mark, including more than $4 billion in both 2022 and 2023 alone.

19. Capital One also promotes its name and marks through various high-profile sponsorships, including: (1) a prominent collegiate football bowl, branded the CAPITAL ONE ORANGE BOWL, (2) the NCAA March Madness basketball tournament, (3) the CAPITAL ONE CUP award for the best collegiate athletics programs in the country, (4) as a Corporate Champion of the NCAA, and (5) the iHeartRadio Music Festival and Jingle Ball concert tour.

20. As a result of its tremendous success, Capital One has received extensive media coverage, including in widely circulated media, such as Businessweek, Forbes, Investor's Business Daily, Fortune, Good Morning America, Business Insider, Fox News, The Talk, USA Today, Huffington Post, Buzzfeed, Washington Post, NY Times, CNN, and Yahoo! Finance.

21. Over the years, Capital One has also received numerous corporate and business awards, including:

- Business Week's "Top 50" performers in the S & P 500
- Forbes "America's Most Reputable Companies"

- Fortune 500 list of America's largest companies

- Fortune's "World's Most Admired Companies"

- Fortune's "100 Best Companies to Work For List"

- Credit Card Magazine's "Issuer of the Year"

- US Banker's "Five Best of the Nation's Largest 100 Banking Companies"

- Information Week 500 for innovation in IT

- CIO 100 award for customer excellence and IT

- Working Mother's 100 Best Companies

22. The CAPITAL ONE mark is inherently distinctive and entitled to broad common law trademark rights. Based on Capital One's extensive use and promotion of the CAPITAL ONE mark, and the recognition and goodwill the mark has achieved in the eyes of the consuming public, the CAPITAL ONE mark is famous.

23. The Defendant Domain Names represent unauthorized colorable imitations of the CAPITAL ONE mark, which further demonstrates that the CAPITAL ONE mark was famous and/or distinctive prior to the time of registration of the Defendant Domain Names. The CAPITAL ONE mark has no significance other than as a source identifier for Capital One's services offered thereunder. By choosing to register domains incorporating the CAPITAL ONE mark, the registrant(s) of the Defendant Domain Names has recognized the source-indicating significance thereof, and is seeking to leverage it for his/her/its own gain.

24. In addition to its broad common law trademark rights in the CAPITAL ONE mark, Capital One possesses statutory rights in the CAPITAL ONE mark by virtue of its ownership of numerous federal trademark registrations for marks comprised of and/or containing CAPITAL ONE, including the following:

| Mark | Registration Number | Registration Date | Goods and Services |
|---|---|---|---|
| CAPITAL ONE | 2065991 | 27-MAY-1997 | INT. CL. 36: CREDIT CARD SERVICES, NAMELY PROCESSING, UNDERWRITING, ISSUING, SERVICING AND ADMINISTERING CREDIT CARDS AND SECURED CARDS |
| CAPITAL ONE | 2065992 | 27-MAY-1997 | INT. CL. 36: FINANCIAL SERVICES, NAMELY CONSUMER BANKING, NAMELY SECURED AND UNSECURED CONSUMER INSTALLMENT LENDING; REAL ESTATE FINANCING, NAMELY MORTGAGE LENDING; AND HOME EQUITY LOANS |
| CAPITAL ONE | 2586340 | 25-JUN-2002 | INT. CL. 36: MOTOR VEHICLE FINANCING SERVICES |
| CAPITAL ONE BOWL | 2853604 | 15-JUN-2004 | INT. CL. 36: FINANCIAL SERVICES, NAMELY FINANCIAL SPONSORSHIP OF COLLEGE FOOTBALL CHAMPIONSHIP GAME |
| CAPITAL ONE ALL-AMERICA MASCOT TEAM | 2960726 | 07-JUN-2005 | INT. CL. 35: PROMOTING SPORTS COMPETITIONS AND/OR EVENTS OF OTHERS |
| CAPITAL ONE BANK | 3419972 | 29-APR-2008 | INT. CL. 36: BANKING AND FINANCIAL SERVICES, NAMELY, CREDIT CARD SERVICES; MORTGAGE LENDING AND HOME EQUITY LOANS; FARM EQUIPMENT, AUTOMOBILES AND RECREATIONAL VEHICLE FINANCING; SECURED AND UNSECURED INSTALLMENT LOANS; CERTIFICATE OF DEPOSITS, INDIVIDUAL RETIREMENT ACCOUNTS, MONEY MARKET, AND CHECKING ACCOUNTS; INVESTMENT BROKERAGE INCLUDING STOCKS, BONDS AND MUTUAL FUNDS; RETIREMENT PLANNING; TRUST SERVICES; AND MANAGEMENT OF MUTUAL FUNDS; INSURANCE SERVICES, NAMELY, BROKERAGE AND ADMINISTRATION OF INSURANCE IN THE FIELD OF LIFE, HEALTH, DISABILITY, DENTAL, VISION, PROPERTY, AND CASUALTY |
| CAPITAL ONE | 3442400 | 03-JUN-2008 | INT. CL. 36: BANKING AND FINANCIAL SERVICES, NAMELY, CREDIT CARD SERVICES; MORTGAGE LENDING AND HOME EQUITY LOANS; FARM EQUIPMENT, AUTOMOBILES AND RECREATIONAL VEHICLE FINANCING; SECURED AND UNSECURED INSTALLMENT LOANS; CERTIFICATE OF DEPOSITS, INDIVIDUAL RETIREMENT ACCOUNTS, MONEY MARKET, AND CHECKING ACCOUNTS; INVESTMENT BROKERAGE INCLUDING STOCKS, BONDS AND MUTUAL FUNDS; RETIREMENT PLANNING; TRUST SERVICES; AND MANAGEMENT OF MUTUAL FUNDS [ ; INSURANCE SERVICES, NAMELY, BROKERAGE AND ADMINISTRATION OF INSURANCE IN THE FIELD OF LIFE, HEALTH, DISABILITY, DENTAL, VISION, PROPERTY, AND CASUALTY ] |
| CAPITAL ONE CUP | 3926997 | 01-MAR-2011 | INT. CL. 41: PROVIDING RECOGNITION AND INCENTIVES BY WAY OF AWARDS TO DEMONSTRATE EXCELLENCE IN THE FIELD OF COLLEGE SPORTS |

| | 3989909 | 05-JUL-2011 | INT. CL. 36: CREDIT CARD SERVICES |
|---|---|---|---|
| | 3993433 | 12-JUL-2011 | INT. CL. 36: BANKING SERVICES |
| | 3993436 | 12-JUL-2011 | INT. CL. 36: BANKING SERVICES |
| CAPITAL ONE JAMFEST | 4103159 | 21-FEB-2012 | INT. CL. 35: PROMOTIONAL SPONSORSHIP OF COLLEGIATE BASKETBALL TOURNAMENT<br>INT. CL. 36: FINANCIAL SPONSORSHIP OF COLLEGIATE BASKETBALL TOURNAMENT<br>INT. CL. 41: ENTERTAINMENT, NAMELY, LIVE MUSIC CONCERTS |
| | 4125337 | 10-APR-2012 | INT. CL. 41: PROVIDING RECOGNITION AND INCENTIVES BY WAY OF AWARDS TO DEMONSTRATE EXCELLENCE IN THE FIELD OF COLLEGE ATHLETICS AND ACADEMICS |
| CAPITAL ONE 360 | 4401562 | 10-SEP-2013 | INT. CL. 36: BANKING SERVICES |
| | 4782002 | 28-JUL-2015 | INT. CL. 35: PROMOTING SPORTS COMPETITIONS AND EVENTS OF OTHERS; PROMOTIONAL SPONSORSHIP OF AN ANNUAL COLLEGE FOOTBALL GAME<br>INT. CL. 36: FINANCIAL SPONSORSHIP OF AN ANNUAL COLLEGE FOOTBALL GAME<br>INT. CL. 41: ENTERTAINMENT IN THE NATURE OF AN ANNUAL COLLEGE FOOTBALL GAME |
| | 4790236 | 11-AUG-2015 | INT. CL. 35: PROMOTING SPORTS COMPETITIONS AND EVENTS OF OTHERS; PROMOTIONAL SPONSORSHIP OF AN ANNUAL COLLEGE FOOTBALL GAME<br>INT. CL. 36: FINANCIAL SPONSORSHIP OF AN ANNUAL COLLEGE FOOTBALL GAME<br>INT. CL. 41: ENTERTAINMENT IN THE NATURE OF AN ANNUAL COLLEGE FOOTBALL GAME |
| CAPITAL ONE INVESTING | 5049821 | 27-SEP-2016 | INT. CL. 36: BROKERAGE IN THE FIELD OF STOCKS, BONDS AND FUNDS; BROKERAGE OF SHARES OR STOCKS AND OTHER SECURITIES; INVESTMENT BROKERAGE |
| CAPITAL ONE WALLET | 5311679 | 17-OCT-2017 | INT. CL. 35: PROMOTING THE SALE OF CREDIT CARD ACCOUNTS AND BANKING ACCOUNT SERVICES THROUGH THE ADMINISTRATION OF AN INCENTIVE AWARD PROGRAM<br>INT. CL. 36: CREDIT CARD SERVICES; BANKING SERVICES |

| | | | |
|---|---|---|---|
| Capital One Arena | 5418308 | 06-MAR-2018 | INT. CL. 43: ARENA SERVICES, NAMELY, PROVIDING GENERAL PURPOSE FACILITIES FOR SPORTS, CONCERTS AND EXHIBITIONS |
| Capital One Arena | 5418309 | 06-MAR-2018 | INT. CL. 43: ARENA SERVICES, NAMELY, PROVIDING GENERAL PURPOSE FACILITIES FOR SPORTS, CONCERTS AND EXHIBITIONS |
| CAPITAL ONE ARENA | 5417214 | 06-MAR-2018 | INT. CL. 43: ARENA SERVICES, NAMELY, PROVIDING GENERAL PURPOSE FACILITIES FOR SPORTS, CONCERTS AND EXHIBITIONS |
| CAPITAL ONE PLATINUM PREFERRED | 5788694 | 25-JUN-2019 | INT. CL. 36: BANKING AND FINANCING SERVICES, NAMELY, ISSUANCE OF CREDIT CARDS |
| CAPITAL ONE CENTER | 6069703 | 02-JUN-2020 | INT. CL. 43: ARENA SERVICES, NAMELY, PROVIDING GENERAL PURPOSE FACILITIES FOR CONFERENCES FOR THE PRESENTATION OF CORPORATE AND ASSOCIATION EVENTS AND FOR THE PRESENTATION OF ENTERTAINMENT, CULTURAL, AND CIVIC EVENTS |
| CAPITAL ONE TRAVEL | 6119276 | 04-AUG-2020 | INT. CL. 35: PROMOTING THE SALE OF CREDIT CARD ACCOUNTS THROUGH THE ADMINISTRATION OF INCENTIVE AWARD PROGRAMS; PROMOTING THE SALE OF GOODS AND SERVICES OF OTHERS BY AWARDING PURCHASE POINTS FOR CREDIT CARD USE |
| CAPITAL ONE TRAVEL | 6119277 | 04-AUG-2020 | INT. CL. 39: TRAVEL AGENCY SERVICES, NAMELY, MAKING RESERVATIONS AND BOOKINGS FOR TRANSPORTATION |
| CAPITAL ONE TRAVEL | 6119278 | 04-AUG-2020 | INT. CL. 43: TRAVEL AGENCY SERVICES, NAMELY, MAKING RESERVATIONS AND BOOKING FOR TEMPORARY LODGING |
| CAPITAL ONE HALL | 6646798 | 15-FEB-2022 | INT. CL. 43: ARENA SERVICES, NAMELY, PROVIDING GENERAL PURPOSE FACILITIES FOR CONFERENCES FOR THE PRESENTATION OF CORPORATE AND ASSOCIATION EVENTS AND FOR THE PRESENTATION OF ENTERTAINMENT, CULTURAL, AND CIVIC EVENTS |
| CAPITAL ONE | 6732379 | 24-MAY-2022 | INT. CL. 39: AIRPORT SERVICES FEATURING TRANSIT LOUNGE FACILITIES FOR PASSENGER RELAXATION |
| CAPITAL ONE SHOPPING | 6747694 | 31-MAY-2022 | INT. CL. 35: ONLINE SERVICES, NAMELY, PROVIDING A WEBSITE FOR USERS TO INTERACT WITH OTHER USERS FOR THE PURPOSE OF FACILITATING DISCOUNTED PURCHASES; ON-LINE PRICE MONITORING FOR PRICE COMPARISON PURPOSES AND ADMINISTRATIVE PROCESSING OF MANUFACTURER'S COUPONS AND REBATES OF REFUND REQUESTS FOR CONSUMER PURCHASES OF GOODS AND SERVICES; PROVIDING POST TRANSACTION PRICE MONITORING SERVICES TO CONSUMERS, NAMELY, MONITORING PRICES OF |

| | | | |
|---|---|---|---|
| | | | GOODS AND SERVICES PREVIOUSLY PURCHASED FOR PRICE COMPARISON PURPOSES TO PROTECT CONSUMERS FROM OVERPAYING; PROMOTING THE GOODS AND SERVICES OF OTHERS BY PROVIDING A WEBSITE FEATURING COUPONS, PRICE-COMPARISON INFORMATION, LINKS TO THE RETAIL WEBSITES OF OTHERS, AND DISCOUNT INFORMATION |
| Capital One Café | 6918671 | 06-DEC-2022 | INT. CL. 36: BANKING AND FINANCING SERVICES INT. CL. 43: CAFÉ SERVICES |
| CAPITAL ONE | 7046762 | 09-MAY-2023 | INT. CL. 9: DOWNLOADABLE MOBILE APPLICATION FOR MANAGING FINANCING AND BANKING ACCOUNTS |
| CAPITAL ONE TRADE CREDIT | 7051521 | 16-MAY-2023 | INT. CL. 36: FACILITATING AND ARRANGING FOR THE FINANCING OF BUSINESS TO BUSINESS COMMERCIAL TRANSACTIONS; FINANCING SERVICES; DEBT COLLECTION; PROVIDING LINES OF CREDIT |
| CAPITAL ONE SOFTWARE | 7164010 | 12-SEP-2023 | INT. CL. 42: SOFTWARE DESIGN AND DEVELOPMENT |
| CAPITAL ONE LOUNGE | 7163967 | 12-SEP-2023 | INT. CL. 39: AIRPORT SERVICES FEATURING TRANSIT LOUNGE FACILITIES FOR PASSENGER RELAXATION |
| CAPITAL ONE DINING | 7225977 | 21-NOV-2023 | INT. CL. 43: PROVIDING ACCESS TO SELECTED RESTAURANTS, NAMELY, MAKING RESERVATIONS AND BOOKINGS TO SELECTED RESTAURANTS; RESTAURANT RESERVATION SERVICES; PROVIDING INFORMATION REGARDING PRE-SELECTED RESTAURANTS THAT OFFER PRIORITY RESERVATIONS AND DINING EXPERIENTIAL ENHANCEMENTS |
| CAPITAL ONE | 7242537 | 12-DEC-2023 | INT. CL. 36: BANKING SERVICES; INTERNET BANKING SERVICES; ISSUING CREDIT CARDS; FINANCING SERVICES; FINANCING RELATING TO AUTOMOBILES; INSTALLMENT LOANS; COMMERCIAL LENDING SERVICES |
| CAPITAL ONE BUSINESS DEALS | 7246420 | 19-DEC-2023 | INT. CL. 35: PROVIDING BUSINESS ADVICE AND INFORMATION; PROVIDING BUSINESS ADVICE AND INFORMATION ABOUT PROCUREMENT, NEGOTIATION, SUPPLIER MANAGEMENT, CONTRACTS, AND SPENDING; ADMINISTRATION OF A PROGRAM FOR ENABLING PARTICIPANTS TO OBTAIN DISCOUNTS ON PRODUCTS AND SERVICES |
| Capital One Park | 7299443 | 06-FEB-2024 | INT. CL. 41: ENTERTAINMENT IN THE NATURE OF BASEBALL GAMES; ORGANIZATION, ARRANGING AND CONDUCTING OF BASEBALL GAMES INT. CL. 43: ARENA SERVICES, NAMELY, PROVIDING GENERAL PURPOSE FACILITIES FOR SPORTS, CONCERTS, CONVENTIONS AND EXHIBITIONS |

25. The aforementioned registrations constitute *prima facie* and/or *conclusive* evidence of the validity of, and Capital One's exclusive rights to use, the CAPITAL ONE mark.

26. Likely due to the financial elements of Capital One's business, Capital One frequently encounters third parties' attempts to misuse the CAPITAL ONE mark to confuse, mislead, and/or deceive consumers. To protect both its consumers and its valuable marks, Capital One has engaged in significant enforcement efforts relating to its intellectual property. Its efforts include defensive domain name registrations, administrative proceedings under the Uniform Domain Name Dispute Resolution Policy, take-down notices, and trademark infringement and anti-cybersquatting actions, including litigation in this Court and others. *See Capital One Financial Corp. v. Velocity-black.com*, 1:23-cv-861 (E.D. Va. Jun. 30, 2023); *Capital One Financial Corporation v. Capital One Auto Group 1 Inc. (New York)*, 2:19-cv-07201 (E.D.N.Y. Dec. 23, 2019); *Capital One Financial Corporation v. Capital Financial, Inc.*, 8:05-cv-02246 (M.D. Fla. Dec. 7, 2005); *Capital One Financial Corp. v. Upshur*, 1:00-cv-1388 (E.D. Va. Aug. 16, 2000).

27. In 2023, Capital One began exploring the potential to acquire Discover Financial Services ("Discover"), a digital banking and payment services company with one of the most recognized brands in U.S. financial services and one of the largest credit card issuers in the United States.

28. On February 19, 2024, Capital One officially announced it had entered into a definitive agreement under which Capital One would acquire Discover for $35 billion.

29. The transaction seeks to bring together two of the biggest brands in the financial services industry – companies with long-standing track records of delivering attractive financial results, award-winning customer experiences, breakthrough innovation, and financial inclusion.

30. The proposed transaction received widespread coverage from countless national and international news publications, including *The Wall Street Journal*, *The Financial Times, The New York Times, Reuters, AP News*, *NPR*, *Forbes*, *Time Magazine*, *USA Today*, *Bloomberg*, *The Washington* Post, *CNN*, *Al Jazeera*, and *Fox Business*.

31. Capital One defensively registered a number of domain names similar to the Defendant Domain Names, including capitalonediscovered.net, capitalonerediscovermobile.biz, capitalonerediscovermobile.co.uk, capitalonerediscovermobile.info, capitalonerediscovermobile.mobi, capitalonerediscovermobile.net, capitalonerediscovermobile.org, capitalonediscovernetworks.com, capitalonediscoverpayments.com, discovercapitalonenetworks.com, and discovercapitalonepayments.com.

### UNLAWFUL REGISTRATION, USE AND/OR TRAFFICKING OF THE DOMAIN NAMES

32. The Defendant Domain Names consist entirely of the CAPITAL ONE mark, with the addition of the term "discover," and the .com, .net, or .org generic top-level domains.

33. The Defendant Domain Names were all registered within days of the announcement by Capital One that it had reached an agreement to acquire Discover, and one of the domains were registered on February 19, 2024, the same day the transaction was announced.

34. The DiscoverCapitalOne.net and DiscoverCapitalOne.org domain names are configured to redirect to another site that automatically downloads malware to a visitor's computer.

35. By adopting the CAPITAL ONE mark in its entirety and adding the term "discover," it is clear that the Defendant Domain Names have been registered for the purpose of, *inter alia*, obtaining Internet visitors when such visitors were attempting to reach Capital One's goods and services.

36. Upon information and belief, the registrant(s) of the Defendant Domain Names registered the domain names in bad faith so as to ultimately mislead consumers into believing the sites are associated with Capital One and ultimately receive compensation when Internet visitors are misled to engage with any content on the website to which the Defendant Domain Names resolve, including monies, to trick consumers into providing sensitive financial information, and/or to be used to send email for the purpose of unlawful impersonation of Capital One.

37. The uses of the CAPITAL ONE mark in the Defendant Domain Names is without authorization from Capital One.

38. Upon information and belief and based on the information available from the public registration records, the Defendant Domain Names do not and cannot reflect the legal name of the registrant of the Defendant Domain Names.

39. Upon information and belief, the registrant(s) of the Defendant Domain Names has not engaged in *bona fide* commercial or noncommercial use of the CAPITAL ONE mark in a website accessible under the Defendant Domain Names and is instead attempting to misrepresent himself/herself/itself as Capital One.

40. Upon information and belief, the registrant(s) of the Defendant Domain Names registered the Defendant Domain Names with intent to divert consumers away from Capital One's online location, for commercial gain, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the Defendant Domain Names.

41. Upon information and belief, the registrant(s) of the Defendant Domain Names provided material and misleading false contact information when applying for and maintaining the registration of the Defendant Domain Names in that the person or entity identified as the registrant of the Defendant Domain Names is not the true owner of the Defendant Domain Names.

42. The registrant(s) of the Defendant Domain Names use services that replace a domain name owner's contact information with names such as "REDACTED FOR PRIVACY," and thereby conceal the identity of the true owner(s) of the domain name.

43. Upon information and belief, if the Defendant Domain Names were registered by different people or entities, the registrants of the Defendant Domain Names acted in concert given the Defendant Domain Names were all registered within a week of each other and all incorporate the CAPITAL ONE mark with the addition of "discover" and a generic top-level domain.

**COUNT ONE:**
**(Violation of the Federal Anti-Cybersquatting Consumer Protection Act)**

44. Capital One repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

45. Capital One's CAPITAL ONE mark is distinctive and was distinctive prior to the time of registration of the Defendant Domain Names.

46. The aforesaid acts by the registrant of the Defendant Domain Names constitutes registration, maintenance, trafficking in, and/or use of domain names that are confusingly similar to Capital One's CAPITAL ONE mark, with bad-faith intent to profit therefrom.

47. In light of the concealment of the identities of the true owners of the Defendant Domain Names, Plaintiff is not able to obtain *in personam* jurisdiction over the registrant(s) of the Defendant Domain Names or any other person who would have been a defendant in a civil action under 15 U.S.C. §1125(d)(1)(A) or, alternatively, Plaintiff, despite its due diligence, has been unable to find a person who would have been a defendant in a civil action under 15 U.S.C. §1125(d)(1)(A).

48. The aforesaid acts by the registrant(s) of the Defendant Domain Names constitutes unlawful cyberpiracy in violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C.

§ 1125(d)(1).

49.     The aforesaid acts have caused, and are causing, great and irreparable harm to Capital One and the public.  The harm to the public includes the potential for fraud stemming from domains that are intended to mislead consumers into assuming an association with Capital One.  The harm to Capital One includes harm to the value and goodwill associated with the CAPITAL ONE mark that money cannot compensate.  Unless permanently restrained and enjoined by this Court, said irreparable harm will continue.

50.     Pursuant to 15 U.S.C. § 1125(d)(2)(D)(i), Capital One is entitled to an order directing the registries for the Defendant Domain Names to change the current registrar to Capital One's registrar of choice and directing the registrant to be changed to Capital One.

## PRAYER FOR RELIEF

WHEREFORE, Capital One respectfully requests of this Court:

1.      That the Court order immediate preliminary and permanent injunctive and other equitable relief to disable the use of the Defendant Domain Names.

2.      That judgment be entered in favor of Capital One on its claim of cybersquatting.

3.      That the Court order the domain registries for the Defendant Domain Names to change the registrar for the Defendant Domain Names to Capital One's registrar of choice and by such registrar's change of the registrant to Capital One.

4.      That the registrar of any other domain names registered by the registrant(s) of the Defendant Domain Names that resemble or include the CAPITAL ONE mark be replaced with Capital One's registrar of choice and that such registrar change the registrant(s) to Capital One.

5.      That the Court order an award of costs and reasonable attorney's fees incurred by Capital One in connection with this action pursuant to 15 U.S.C. § 1117(a); and

6.      That the Court order an award to Capital One of such other and further relief as the Court may deem just and proper.

Dated: March 25, 2024    By:    */s/ Attison L. Barnes, III*
Attison L. Barnes, III (VA Bar No. 30458)
David E. Weslow (for *pro hac admission*)
Spencer C. Brooks (VA Bar No. 94676)
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
Tel: (202) 719-7000
abarnes@wiley.law
dweslow@wiley.law
scbrooks@wiley.law

*Counsel for Plaintiff*
*Capital One Financial Corporation*